# Palmer Water Co. v. Lehighton Water Supply Co., Appellant.

*Equity—Practice, equity—Findings of fact—Inconsistent findings—Remission of record.*

Where on appeal from a decree in equity, the record discloses numerous inconsistent findings of fact, some of which have a tendency to sustain the decree, while others are adverse to it, the appellate court will remit the record to the court below, in order that the findings may be made clear and consistent.

Argued April 16, 1919. Appeal, No. 2, Jan. T., 1918, by defendant, from decree of C. P. Carbon Co., June T., 1912, No. 1, on bill in equity in case of Palmer Water Company v. Lehighton Water Supply Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, SIMPSON and KEPHART, JJ. Reversed.

Bill in equity for an injunction. Before GROMAN, P. J., specially presiding.

The court entered a decree awarding an injunction. Defendant appealed.

*Error assigned* was the decree of the court.

*Freyman, Thomas & Branch, A. T. Walsh, P. F. O'Neill,* and *F. W. Wheaton,* for appellant.

*Arch. T. Johnson, Jacob C. Loose* and *Duane, Morris & Heckscher,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 21, 1919:

In this case the court below enjoined appellant from diverting the waters of Pine creek to the prejudice of the Palmer Water Company, the latter having appropriated the waters of Big creek, of which Pine creek is a tributary. An examination of the record discloses numerous

inconsistent findings of fact, some of which have a tendency to sustain the decree, while others are adverse to it. It is the duty of the court below to make its findings clear and consistent, and we are compelled to remit the record that this duty may be properly performed. As illustrative thereof, we may point to the following, leaving to counsel for the respective parties the task of calling attention to any others which may seem imperfect to them:

(A) Compare finding of fact No. 5, p. 13: "Big Creek is a mountain stream whose minimum yield is approximately 14,000,000 gallons per day," with finding No. 17, p. 26: "The continuous minimum flow of Big Creek...... is 24,000,000 gallons every 24 hours, and the maximum flow has been as high as 41,000,000 gallons every 24 hours"; and finding No. 26, p. 27: "The average daily flow......of 29,000,000 gallons per day is 2.5 times the capacity of the pipe used by the Palmer Water Company to convey water to the New Jersey Zinc Company." What is the minimum flow?

(B) Compare finding No. 10, p. 53: "The Palmer Water Company has not condemned more water than its present and future needs require," being (finding No. 2, p. 13) "all the water of Big Creek at and above the Parryville dam," in order to deliver it to its "one consumer, the New Jersey Zinc Company" (see finding No. 21, p. 26), and its needs measure the appellee's requirements, and finding No. 8, p. 14: "The New Jersey Zinc Company [of Pennsylvania] requires for its manufacturing uses at the present time 16,000,000 gallons of water per day," and (finding No. 9, p. 14) "its probable requirements [will be] twenty million gallons per day at the expiration of four years," with finding No. 25, p. 27: "The maximum capacity of the pipe-line leading from the Parryville dam of the Palmer Water Company to the plant of the New Jersey Zinc Company of Pennsylvania is 11,500,000 gallons per day," and with paragraph (A) above.

(C) Also compare findings Nos. 29, 30 and 34, pp. 28 and 29: "That on an average of 17,000,000 gallons of water every 24 hours passes down the sluiceway of the Carbon Iron & Steel Company and flows into the Lehigh river," and is thus lost to all parties, and "the...... Steel Company pumps from the flume that leads from the Parryville dam to the shops of said company about 3,000,000 gallons a day;" and "that the average daily flow......into the flume of the......Steel Company ......was 20,000,000 gallons," (or, as further analyzed by plaintiff's testimony, 13,000,000 gallons per day is necessary for appellee's use; this, with the Zinc Company's or appellee's requirement, of 16,000,000 gallons, makes a total of 29,000,000 gallons daily use; in addition, add the water lost by seepage, 6,000,000 gallons daily, and we have 35,000,000 gallons daily use) with finding No. 19, p. 26: "That for the greater portion of the year the water flows over the breast at the Parryville dam," and with paragraph (A) and (B) above.

The uncontradicted evidence is that 6,480,000 gallons were lost daily by actual measurement through seepage and leaks. One-half of the loss came from the flume of the Carbon Iron & Steel Company and one-half seeped underneath the dam. Compare finding No. 23, p. 18, which says: "Every reasonable effort has been made ......to minimize the seepage......In 1908 over $2,000 were expended......in extensive repairs," with finding No. 28, p. 28, which says: "That with reasonable expenditure 4,500,000 gallons of the leakage can be conserved."

The decree is reversed, the exceptions are reinstated and the record remitted to the court below that proper and consistent findings of fact may be made, the law applied thereto, and a decree entered in accordance therewith.