J-A18014-17

2017 PA Super 390

| IN RE: ESTATE OF PETER J. CARUSO, III, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: GERALDINE CARUSO | No. 1711 WDA 2016 |

Appeal from the Order Entered October 18, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 3623 of 2015

BEFORE:  BOWES, LAZARUS, AND OTT, JJ.

OPINION BY BOWES, J.:                    **FILED  DECEMBER 12, 2017**

Geraldine Caruso appeals from the October 18, 2016 order granting summary judgment in favor of Sandra A. Caruso, the Executrix of the Estate of Peter J. Caruso, III, ("Executrix") in this equity action.  After thorough review, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

Geraldine commenced this action against Executrix in the Court of Common Pleas of Allegheny County.  In her complaint, she alleged the following.  Hays Land Company ("HLC") was a general partnership formed on or before December 12, 1983.  The original partners were Mary Ann Caruso and her sons, Peter J. Caruso, III, and John D. Caruso, Geraldine's deceased husband.  On December 31, 1997, Mary Ann sold her interest in the Partnership to the remaining partners in equal shares, and Peter and John

operated it until John's death in 2003. Geraldine pled that, thereafter, she and Peter were general partners each owning a fifty percent interest in HLC.

Peter died on May 18, 2015. Geraldine averred that at the time of Peter's death, the 1983 Partnership Agreement was in full force and effect. In accordance with the Agreement's buy-sell provision governing dissolution upon the death of a partner, Geraldine notified Executrix that she intended to purchase Peter's partnership interest. That provision stated that, upon dissolution due to the death of a partner, the "remaining Partner shall have the obligation within ninety (90) days from the date of death of the deceased Partner to purchase the interest of the deceased Partner in the Partnership and to pay to the personal representative of such deceased Partner the value thereof . . ." Complaint, at ¶20.

Geraldine calculated that the sum of $117,762.50 was due for Peter's interest, and she tendered the first of nine payments towards the purchase on August 12, 2015. On that same date, counsel for Executrix advised Geraldine's counsel that the 1983 Partnership Agreement was not in effect at Peter's death, and returned the check. Geraldine pled that she was "ready, willing, and able to purchase the partnership interest of Peter," as required under the terms of the Partnership Agreement, but that Executrix "has refused, and continues to refuse to honor" the duty to sell. *Id*. at ¶¶ 34, 35. Geraldine asked the court to order Executrix "to perform specifically the

provisions of the Partnership Agreement as they relate to the sale and purchase of the deceased Partner's interest." *Id*. at ¶ 36.

At count II, Geraldine pled that Peter formed a limited liability company known as Hays Land Company-Pittsburgh, LLC. *Id*. at ¶40. On or about April 30, 2015, without her knowledge, he executed a Joint Written Consent of Partner and Member in Lieu of Meeting on behalf of the Partnership, purporting to merge the Partnership with the newly-formed LLC. She alleged that Peter did not have the authority under the law or the Partnership Agreement to cause the merger, and she asked the court to declare the merger null and void. *Id*. at ¶¶49, 50, 51.

Executrix filed an answer and new matter in which she averred that the original partnership was dissolved upon the death of John D. Caruso, and that Geraldine and Peter formed a new partnership that was not governed by any agreement. Answer, ¶ 7. She alleged that the Partnership Agreement and, specifically, the buy-sell provision, had no application to the second partnership formed by Peter and Geraldine. Moreover, she pled that when Peter merged the HLC partnership into the LLC on or about April 30, 2015, Geraldine's fifty percent interest in the partnership was exchanged for a fifty percent interest in the LLC. As a result of the merger, all assets of the Partnership were held by the LLC as of Peter's death. Finally, Executrix pled that Peter was within his rights to execute the Joint Consent and to merge the Partnership into the LLC.

Executrix filed a motion for summary judgment on September 1, 2016, in which she asserted the Dead Man's Act prevented Geraldine from offering oral testimony regarding the nature of her agreement with Peter, and thus effectively precluded Geraldine from proving her case. Geraldine opposed the motion, but the court granted summary judgment on October 17, 2016, without a hearing. Geraldine timely appealed and raises two questions for our review:

I.    Did the trial court abuse its discretion and commit an error of law in granting the Estate's motion for summary judgment when there was substantial evidence, including admissions by the Decedent, that the partnership agreement remained in full force and effect?

II.   Did the trial court abuse its discretion and commit an error of law in deciding that one partner, having 50% ownership interest in the partnership, could make fundamental changes to the partnership unilaterally, without the other 50% partner's knowledge or consent?

Appellant's brief at 4 (unnecessary capitalization omitted).

Summary judgment can be entered "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002). When the trial court considers such a motion, it must view "all facts of record and all reasonable inferences therefrom in a light most favorable to the non-moving party[,]" and "resolve all doubts as to the existence of a

- 4 -

genuine issue of material fact against the moving party." *Id*. Summary judgment is properly granted only "where the right to such judgment is clear and free from all doubt." *Id*.

Our scope of review of an order "granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Universal Health Services, Inc. v. Pennsylvania Property and Casualty Insurance Guaranty Assoc.*, 884 A.2d 889, 892 (Pa.Super. 2005) (citation omitted). "We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *LJL Transp., Inc. v. Pilot Air Freight Corp*., 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

Since the issue of whether there are genuine issues of material fact is a question of law, our standard of review on that issue is *de novo*, and we need not defer to the determination of the trial court in this regard. *Id*. Furthermore, in resolving a question of law, we review the issue in the context of the entire record. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. 2007).

Certain principles regarding general partnerships inform our review. Under the Uniform Partnership Act ("UPA"), whether a partnership exists depends upon whether the parties intended to be parties. No formal or written agreement is required. **Murphy v. Burke**, 311 A.2d 904 (Pa. 1973). A partnership may be found to exist by implication from the circumstances and manner in which the business was conducted. **DeMarchis v. D'Amico**, 637 A.2d 1029 (Pa.Super. 1994). Furthermore, under Pennsylvania's UPA, a partnership was not a legal entity separate from its partners and had no residence or domicile distinct from that of its partners.[1] "It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit." **Svetik v. Svetik**, 547 A.2d 794, 797-798, (Pa.Super. 1988) (quoting **Tax Review Board of the City of Philadelphia v. D.H. Shapiro Co.**, 185 A.2d 529, 533 (Pa. 1962)).

Preliminarily, we note the following. There is no dispute that Geraldine and Peter were partners in HLC at the time of the purported merger on or about April 30, 2015. Geraldine maintained that neither the UPA nor the Partnership Agreement authorized Peter's unilateral merger of the

---

[1] The Pennsylvania Uniform Partnership Act, 15 Pa.C.S. § 8301 *et seq.*, was in effect at all relevant times herein. The General Assembly subsequently repealed the statute by Act 2014-172, effective July 1, 2015, known as the Association Transactions Act, and the Associations Code, 2016, Nov. 21, P.L. 1328, No. 170, § 25, effective February 21, 2017. The Uniform Partnership Act of 2016, is located at 15 Pa.C.S.§ 8411 *et seq*.

Partnership into the LLC, and hence, the merger was null and void. The trial court concluded that, since partners "have equal rights in the management and conduct of the partnership business[,]" the Dead Man's Act would bar Geraldine from producing any evidence that Peter could not have legally merged the partnership into the LLC unilaterally, and thus, summary judgment was appropriate on this issue. Since a finding that the merger was valid would render moot Geraldine's claim for specific performance, we will address the merger issue first.

The Dead Man's Statute is codified at 42 Pa.C.S. § 5930, and provides in pertinent part:

> Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy unless the action or proceeding . . . [exceptions inapplicable herein].

42 Pa.C.S. § 5930. This Court has stated that "The purpose of the dead man's act is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the

death of the decedent." ***In re Estate of Petro***, 694 A.2d 627, 632

Pa.Super. 1997); ***in accord In re Fiedler***, 132 A.3d 1010, 1013 (Pa.Super.

2016) ("the law should not permit the surviving party to testify since he

could lie and attempt to testify favorably to himself and adversely to the

deceased party, knowing the other party is incapable of contradicting the

fallacious testimony.").

As Geraldine points out, Executrix admitted in her Answer and New

Matter that Peter acted unilaterally in merging the HLC partnership into the

LLC.  According to Executrix, however, Peter's April 30, 2015 merger of the

partnership into the LLC without Geraldine's knowledge or consent was

authorized under §§ 8321[2] and 8331[3] of  the UPA. Geraldine counters that

---

[2] 15 Pa.C.S. § 8321, entitled "**Partner agent of partnership as to partnership business**," provides:

    (a)   **General rule**.-Every partner is an agent of the partnership for the purpose of its business and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom is dealing has knowledge of the fact that he has no such authority.

        . . . .

    (b)   **Limitations on authority of individual partners**.- Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to:

*(Footnote Continued Next Page)*

Peter's unilateral action without her knowledge and consent was not

*(Footnote Continued)* ——————————

       (1)    Assign the partnership property in trust for creditors or on the promise of the assignee to pay the debts of the partnership.

       (2)    Dispose of the goodwill of the business.

       (3)    Do any other act which would make it impossible to carry on the ordinary business of a partnership.
          . . . .

15 Pa.C.S. § 8321 (repealed).

[3] 15 Pa.C.S. § 8331 (repealed by Act 2016-170, approved November 21, 2016, effective February 21, 2017), provides in pertinent part:

> (8) Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners.

The subject matter of the former § 8331(8) is contained in § 8441(j) of the new Associations Code, which provides: "A difference arising as to a matter in the ordinary course of business of a partnership may be decided by a majority of the partners. An act outside the ordinary course of business of a partnership and an amendment to the partnership agreement may be undertaken only with the affirmative vote or consent of all the partners." The 2016 Committee Comment to § 8441(j) explains that "the prior law required majority consent for ordinary matters and unanimous consent for amending the partnership agreement, but was silent regarding extraordinary matters. This subsection requires unanimous consent for extraordinary matters."

authorized under the UPA or the 1983 Partnership Agreement, and thus, there was no merger. Hence, the Partnership was ongoing at Peter's death. She argues that restructuring the general partnership and transferring the interests of the general partnership to an LLC is not conduct consistent with mere "management and conduct of the partnership business," which partners have equal rights to do under § 8331 of the UPA. Rather, Geraldine contends that Peter's purported merger was not an act undertaken in the ordinary course of business, and thus, it required the consent of all the partners. 15 Pa.C.S. § 8331(8). She maintains that her testimony was unnecessary to substantiate her claim for declaratory relief.

We find that the validity of Peter's purported merger of the Partnership into the LLC did not hinge on Geraldine's ability to testify. First, in order to be entitled to summary judgment based on the merger, Executrix bore the burden of proving that a merger took place. The documents supplied by Executrix fall short of conclusive proof that a merger was consummated on or about April 30, 2015.[4]

Second, whether a merger is an act contemplated within the term "carrying on of the business of the partnership" is a question of law. 15

_____

[4] Executrix's documentation of the alleged April 30, 2015 merger consisted of merely a plan for merger and a docketing statement, neither of which established that a merger was approved. Absent such evidence, Executrix is not entitled to summary judgment on the issue of its validity.

Pa.C.S. § 8321. The purported merger terminated the ordinary business of the Partnership, an act that arguably would fall within the scope of actions requiring the consent of all partners under § 8321(b). Nor do we agree with the trial court that § 8331(5), which provides that "partners have equal rights in the management and conduct of the partnership business," permits one partner to unilaterally merge the partnership into an LLC without the consent of the other. In any event, there are numerous factual and legal issues surrounding the validity of the purported merger herein, and Executrix's right to judgment as a matter of law is not "clear and free from doubt." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).[5] The trial court erred in utilizing the Dead Man's Act to grant summary judgment in favor of Executrix on the validity of the merger.

---

[5] The parties assume that a general partnership could be merged into an LLC in April 2015, a premise we find legally faulty. A general partnership formed pursuant to the UPA was not an "entity," but rather "an association of two or more persons to carry on as co-owners a business for profit." 15 Pa.C.S. § 8301(a). Recently, Act 2014-172, effective July 1, 2015, known as the Association Transactions Act, defined an association as "A corporation, a partnership, a limited liability company, a business trust or two or more persons associated in a common enterprise or undertaking." 15 Pa.C.S. § 102 Historical and Statutory Notes. The Act "integrat[ed] the law on corporations and other associations by enacting provisions applicable to all forms of associations and authorizing transactions involving any form of association." Sections 1 and 1.1 of 2014, Oct. 22, P.L. 2640, No. 172, effective July 1, 2015.

Until the effective date of this legislation, which was after Peter's death, general partnerships were not "entities" that could be merged into other

*(Footnote Continued Next Page)*

Having concluded that it was error to grant summary judgment on the merger issue, we turn now to Geraldine's first issue regarding the propriety of the trial court's reliance upon the Dead Man's Act to grant summary judgment on her specific performance claim. The court concluded that Geraldine was incompetent to testify as to the nature of her partnership agreement with Peter under the Dead Man's Act, and that without her testimony, she could not produce clear and convincing evidence that the Partnership continued after John's death and that the 1983 Partnership Agreement's buy-sell provisions governed.

Geraldine counters that dissolution upon the death of a partner is not automatic, and that there was no liquidation and buy-out when John died. She points out that partners, or a deceased partner's legal representative, may agree not to dissolve a partnership upon the death of a partner. 13 Summ. Pa. Jur. 2d Business Relationships § 16:14 (2d ed.). Geraldine contends that she, as John's legal representative, and Decedent agreed to continue the Partnership pursuant to the Partnership Agreement. Geraldine

_(Footnote Continued)_ ———————————

entities. Under the new partnership laws, a partnership agreement cannot vary statutory rules governing the right of a partner to approve a merger. **See** 15 Pa.C.S. §8415 and provisions cited therein.

Since the purported merger of the HLC general partnership into the LLC occurred on or about April 30, 2015, which pre-dated the effective date of the legislation that would permit such a merger, it may have been null and void for this reason as well.

argues that the Dead Man's Act only bars oral testimony about pre-death events from a person adverse to the decedent. While she may be incompetent to testify regarding her agreement with Peter, Geraldine contends that she is not precluded from offering testimony from non-adverse witnesses.

In addition, she relies upon *In re Rider's Estate*, 409 A.2d 397, 400 (Pa. 1979), for the proposition that the Dead Man's Act does not bar the introduction of documents, and "[w]ritten testimony offered by an adverse surviving party is not rendered incompetent by the" Act. *See also Larkin v. Metz*, 580 A.2d 1150 (Pa.Super. 1990) (holding in dispute over existence of contract involving a deceased party that the Dead Man's Act did not bar written evidence or preclude incompetent witness from testifying for purpose of identifying documents). Geraldine contends that she has produced sufficient competent evidence to raise a genuine issue of material fact that the 1983 Partnership Agreement governed her partnership with Peter.

In support of her position that the original partnership continued, Geraldine offered admissions in the pleadings from an equity case she filed against Peter, HLC, and Peter J. Caruso & Sons, Inc. at No. G.D. 13-6302, hereinafter the "prior case." In that prior case, Geraldine pled that she and Peter each owned fifty percent interest in the Hays Land Company partnership. Complaint, "Prior Case," ¶¶ 6-9. Peter Caruso admitted the truth of this allegation in a verified answer. He also admitted that the Hays

- 13 -

Land Company general partnership was formed on or before December 1983 and that "[t]he original general partners of Defendant Hays Land Company were Mary Ann Caruso, Peter J. Caruso, III and John D. Caruso (Plaintiff Geraldine Caruso's deceased husband)." *Id*. at ¶¶ 16, 17. Appended to the complaint in the prior case was the 1983 Partnership Agreement for Hays Land Company, which Geraldine pled was controlling. Peter did not specifically deny that the Agreement governed. According to Geraldine, one could reasonably infer from these admissions that the partnership of Peter and Geraldine was the continuation of the original partnership governed by the 1983 Partnership Agreement.[6]

As additional evidence that the 1983 Partnership Agreement governed their partnership, Geraldine pointed to the pattern of conduct. Paragraph three of the Agreement, "Term of Partnership," provided that the Partnership "shall continue until dissolved by mutual agreement of the parties or terminated as herein provided." Partnership Agreement, at ¶3. She supplied financial documents of HLC that she maintains prove that the

_____

[6] In the prior case, Geraldine charged, *inter alia*, that Peter had excluded her from meaningful involvement in the business of the Partnership, denied her access to the books, and made substantial business decisions without seeking her input or permission. Prior Case, Complaint at ¶¶ 34, 36, 38. She sought a formal accounting and monetary damages, as well as injunctive relief barring Peter from excluding her from meaningful participation in the Partnership. The status of that litigation is not clear from the record.

process outlined in paragraph twelve of the Partnership Agreement for the dissolution of the Partnership upon the death of a partner was not followed when her late husband John died. Thus, she contends, she is entitled to the inference that the Partnership continued since it was not terminated upon John's death as provided in the Agreement. At the very least, Geraldine argues that the Partnership financial and business records were sufficient to establish a genuine factual dispute as to whether the Partnership continued after John's death.

Finally, Geraldine maintains that, even if HLC automatically dissolved upon John's death, the Partnership Agreement continued to govern the partnership between herself and Peter. She avers that the foregoing documents and course of dealing reveal an intent on the part of Peter and herself that the Partnership remain subject to the terms of the 1983 Partnership Agreement.

Executrix counters that continuation of the business was not conclusive of whether Peter intended to make Geraldine a partner in the original partnership. She contends that Geraldine and Peter formed a new partnership that, in the absence of a new partnership agreement, was governed by the UPA, not the 1983 Agreement. Under the UPA, Executrix maintains that there was no mandatory buy-out provision such as the one contained in the 1983 Agreement.

It is undisputed that the 1983 Partnership Agreement governed the HLC partnership of John and Peter. Although Executrix contends that the Partnership dissolved as a matter of law upon John's death, the language of the Agreement suggests the contrary. The Agreement provided that the Partnership "shall continue until dissolved by mutual agreement of the parties or terminated as herein provided." Partnership Agreement, at ¶ 3.[7] The financial documents do not reflect that there was a settlement or liquidation of John's interest as outlined in Paragraph fourteen of the Partnership Agreement.

Geraldine concedes that she is incompetent to offer testimony regarding her agreement with Peter prior to his death. However, she is correct that non-party witnesses are permitted to offer testimony that would shed light on the terms of the agreement. Although she did not supply affidavits or deposition excerpts from those witnesses setting forth the

---

[7] Paragraph eleven provided for withdrawal of a partner at the end of any accounting period with notice. Paragraph twelve authorized the remaining partners to continue the Partnership business by purchasing the interest of a partner "[o]n dissolution of the Partnership by the withdrawal or other act of a Partner." *Id*. at ¶ 12. Paragraph thirteen set forth the manner in which the purchase price of a withdrawing or terminated partner would be calculated. Executrix relied solely on the death of John as the basis for dissolution of the Partnership.

substance of their anticipated testimony,[8] she is not precluded from offering non-adverse witnesses at trial. The question is whether Geraldine, the non-moving party, provided sufficient evidence not barred by the Dead Man's Act, to raise a genuine issue of material fact as to whether the 1983 General Partnership continued after John's death with Geraldine stepping into her late husband's shoes. We answer that question in the affirmative.

We find support in the record for Geraldine's contention that dissolution of the Partnership was not automatic upon John's death. The Partnership was not terminated in accordance with the Agreement following John's death, *i.e.*, there was no buy-out of John's share that would have been mandatory following dissolution due to death of a partner. Partnership Agreement, ¶14. Such a course of conduct is compelling evidence that the parties intended to continue the partnership.

This inference is bolstered by the tax returns from 1998 through 2014, signed by Peter, that recite that HLC was formed in 1979, and reflect the

---

[8] Although a motion for summary judgment is premature until the close of discovery, it does not appear that the parties engaged in extensive discovery. The absence of interrogatory answers and deposition testimony herein is likely due to the fact that a decedent's representative relying upon the Dead Man's Act waives the protection of the Act when he or she takes a deposition or serves written interrogatories. **See Olson v. North Am. Indus. Supply**, 658 A.2d 358, 364-65 (Pa.Super.1995); **see also Estate of Kofsky**, 409 A.2d 1358 (Pa. 1979) (finding waiver where a claimant proceeding against the decedent's representative testifies as to facts occurring after decedent's death, and is cross-examined regarding matters occurring during decedent's lifetime).

same employer identification number for HLC for more than three decades. In addition, Peter's admissions in the prior case that he and Geraldine were partners in the Hays Land Company, a Pennsylvania General Partnership, formed on or before December 12, 1983, which was the same partnership formed by John, Peter, and Mary Ann, is powerful evidence that the original partnership continued. While technically these are extra-judicial admissions, rather than judicial admissions that would eliminate the need for proof of these facts, they were unequivocal and made in circumstances where they were legally binding. *See Durkin v. Equine Clinics, Inc.*, 546 A.2d 665, 670 (Pa.Super. 1988) (explaining distinction between judicial admissions that withdraw a fact from issue and "informal judicial admissions" consisting of testimony by a party at a prior trial or deposition that may dispense with the need for proof where they are "unequivocal and clear"); *C.f*. *Intili v. Salak*, 589 A.2d 761 (Pa.Super. 1991) (verified pleadings in a prior action between the parties, which culminated in a decree or final judgment, acted as *res judicata* or collateral estoppel in the subsequent proceedings).

In addition to finding that summary judgment was not proper on the merger issue, we find that there was sufficient competent evidence that Geraldine and Peter's partnership was governed by the 1983 Partnership Agreement at the time of his death to present a genuine issue of material fact. Peter's admissions in the prior case, the tax returns, Schedule Ks,

Peter's representations in the merger plan, as well as Executrix's admissions herein, taken in the light most favorable to Geraldine, the non-moving party, were sufficient without Geraldine's testimony to withstand summary judgment. The trial court's grant of summary judgment based on the Dead Man's Act was improper.

Order reversed. Case remanded for further proceedings consistent with this adjudication. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017