J-A20036-21

2021 PA Super 211

| | | |
|---|---|---|
| JANICE L. FRAZER, ADMINISTRATRIX, D.B.N.C.T.A., OF THE ESTATE OF CLAIR D. MCENTIRE | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : : | |
| SANDRA E. MCENTIRE, EXECUTRIX OF THE ESTATE OF DAVID C. MCENTIRE | : : : | No. 118 WDA 2021 |

Appeal from the Order Entered December 29, 2020
In the Court of Common Pleas of Clarion County Civil Division
at No(s):  46 C.D. 2014

BEFORE:    PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

OPINION BY McCAFFERY, J.:                          **FILED: OCTOBER 20, 2021**

Janice L. Frazer (Appellant), Administratrix, d.b.n.c.t.a., of the Estate of

Clair D. McEntire, appeals from the order entered in the Clarion County Court

of Common Pleas, granting summary judgment in favor of Sandra E. McEntire

(Appellee), Executrix of the Estate of David C. McEntire.  In this matter,

Appellant, as administratrix of her father's estate, has sued her brother's

estate for fraud and conversion, for allegedly withholding a "cash asset" that

should have passed through the father's will to the beneficiaries.  On appeal,

Appellant avers the trial court erred in: (1) applying the Dead Man's Act[1] to

_____

[1] 42 Pa.C.S. § 5930.

preclude witness testimony about the existence of the cash asset; and (2) granting summary judgment where there existed additional evidence of the existence of the cash asset. We hold that under the particular facts presented, the court did not err in: (1) applying the Dead Man's Act to preclude testimony; and (2) finding the Dead Man's Act *devisavit vel non*[2] exception did not apply, as the matter did not relate to the passage of property through will or intestacy, but instead, the instant claims sounded in fraud and conversion. Accordingly, we affirm.

We glean the following generally from the pleadings. Appellant's father, Clair D. McEntire, died testate on December 28, 2010. Appellant's Second Amended Complaint, 1/29/18, at 3. Clair's will named three beneficiaries: (1) his son, David C. McEntire; (2) his daughter, Appellant; and (3) his granddaughter, Rebecca V. Shick, who is the child of a daughter who predeceased Clair.[3] David was named the executor of Clair's will, but he died on April 30, 2012, prior to the finalization of Clair's estate. *Id.* at 4. Appellant was then named administratrix of Clair's estate. Meanwhile, David's wife, Appellee (Appellant's sister-in-law) was named executrix of David's estate.

This matter commenced with Appellant's filing of a praecipe for writ of summons on January 10, 2014, against Appellee, as administratrix of David's

---

[2] **See** Black's Law Dictionary 463 (7th ed. 1999) ("he (or she) devises or not").

[3] N.T., 11/5/19, at 9.

estate. Appellant's January 29, 2018, second amended complaint presented claims of conversion and fraud. It averred:

> On January 1, 2011, the day after [Clair's funeral], at a meeting in the kitchen of David['s] residence, between [David, Appellant, and Rebecca,] and during the administration of [Clair's estate, the executor David] informed [Appellant] and Rebecca . . . that [Clair] had cash assets of $130,000.00, which [David] was keeping in his safe located at the McEntire Funeral Home, [in] Knox, Pennsylvania, for eventual distribution to [Clair's] three beneficiaries[.]

Appellant's Second Amended Complaint, at 7-8. Appellant contended that David, as executor of Clair's estate, was duty bound to distribute this cash asset to the three beneficiaries. *Id.* at 6. However, neither David, nor Appellee as administratrix of his estate, has distributed any portion of this cash asset. *Id.*

On August 14, 2019, Appellee filed a motion *in limine*, asserting the only evidence supporting Appellant's claim of a $130,000 "cash asset" was "an alleged statement made by David . . . now deceased, more than eight years ago." Appellee's Motion *in Limine*, 8/14/19, at 1. Appellee argued that any testimony or evidence about that alleged statement was barred by the Dead Man's Act. Appellant responded with her own motion *in limine*, denying that the Dead Man's Act applied. In support, she contended: (1) her and Rebecca's interests were not adverse to David's interests, "since they are trying to marshal assets belonging to [Clair's estate,] of which [David] was once Executor;" and, in the alternative (2) the *devisavit vel non* exception applied. Appellant's Motion *in limine*, 8/28/19, at 3-4.

- 3 -

For ease of review, at this juncture we set forth the contours of the Dead Man's Act and relevant authority. This evidentiary rule is codified at Section 5930 of our Judicial Code in pertinent part as follows:

**§ 5930.   Surviving party as witness, in case of death, mental incapacity, etc.**

[I]n any civil action or proceeding, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed . . . to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party . . . unless the issue or inquiry be *devisavit vel non*, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

42 Pa.C.S. § 5930.

"The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that: 'no interest or policy of law . . . shall make any person incompetent as a witness.'" *Larkin v. Metz*, 580 A.2d 1150, 1152 (Pa. Super. 1990), *citing* 42 Pa.C.S. § 5921. "The Act provides that one whose interest is adverse to the interest of a decedent is not a competent witness to any matter which occurred before the decedent's death." *Schroeder v. Jaquiss*, 861 A.2d 885, 887 (Pa. 2004).

This Court has stated:

The purpose of the statute is to prevent the injustice that may result from permitting a surviving [witness] to a transaction to give testimony favorable to himself and adverse to the decedent,

- 4 -

which the decedent's representative would be in no position to refute by reason of the decedent's death.

> Under the Dead Man's Act three conditions must exist before the surviving party or witness is disqualified: "(1) the deceased must have had an actual right or interest in the matter at issue, *i.e.* an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest."

***Larkin***, 580 A.2d at 1152 (citations omitted). "[A]pplication of the rule requires that the interest of the proposed witness be adverse to the interest of the decedent's estate. 'In order to be adverse the interest must be one from which the witness will either gain or lose as the direct legal operation and effect of the judgment.'" ***Gibbs v. Herman***, 714 A.2d 432, 436 (Pa. Super. 1998) (citation omitted).

We further consider:

> The *devisavit vel non* exception provides that "witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule." "This exception applies to disputes involving the transfer of a decedent's estate both by operation of law or by will and renders competent all witnesses claiming decedent's property by reason of [his] death."

***In re Estate of Janosky***, 827 A.2d 512, 516 n.3 (Pa. Super. 2003) (citations omitted).

The trial court conducted a hearing on the parties' cross motions *in limine* on November 5, 2019. Appellant and Rebecca testified. The court granted Appellee's motion, concluding that the Dead Man's Act precluded

Appellant and Rebecca from providing any testimony about their alleged conversation with David concerning Clair's $130,000 cash asset. The court first emphasized the instant action does not involve any claim against Clair's estate, but rather David's estate, and that for purposes of the Dead Man's Act, the deceased individual is David. Memo. Opin., 11/20/19, at 4. The court found: (1) David's estate "clearly has an interest" in the instant conversion and fraud action, which is based on allegations that David and Appellee, as executor, were withholding funds belonging to Clair's estate; (2) Appellant and Rebecca's interests were adverse to David's interests, where the allegations were that David's estate "is in possession of an asset required to be divided among the three" beneficiaries of Clair's will; and (3) Appellee, as executor of David's estate, represents David's interests. *Id.* Furthermore, the trial court rejected Appellant's reliance on the *devisavit vel non* exception. The court reasoned: (1) this matter does not present claims against Clair's estate, nor challenge either Clair's or David's will; and (2) instead, "[t]his is an action to determine whether a cash asset exists, not who the proper beneficiary is under a will or what the intentions of a deceased devisee were." *Id.* at 5.

Upon Appellant's motion, the trial court certified its motion *in limine* order as an interlocutory appealable order.[4] Order, 12/23/19. However, this Court denied Appellant permission to appeal.

Following a status conference with the trial court, Appellee filed a motion for summary judgment on August 19, 2020. Appellant filed an answer, attaching two affidavits: one by David's ex-son in law, Jason Schnabl,[5] and one by Appellant's friend, Diana Sue Glosser. The trial court heard oral argument, by Zoom conference, on November 10th.

On December 29, 2020, the trial court issued the underlying order, granting Appellee's motion for summary judgment. The court found "there is no issue to be submitted to the jury because [Appellant] has failed to establish a *prima facie* case for conversion or fraud due to the lack of evidence that a $130,000 'cash asset' ever existed." Opin. & Order, 12/29/20, at 2. Appellant filed a timely notice of appeal and subsequently complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[6]

---

[4] *See* 42 Pa.C.S. § 702(b) (interlocutory appeals by permission).

[5] Jason was previously married to David's daughter.

[6] The trial court issued its Rule 1925(b) order on January 25, 2021, directing Appellant to file a statement within 21 days. Order, 1/25/21. This 21-day deadline fell on Monday, February 15th, which was a court holiday, Presidents' Day. Appellant's statement, filed the following day, February 16th, was timely. *See* 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on legal holiday, such day shall be omitted from computation).

Appellant presents two issues for our review:

1. The Trial Court erred in granting . . . Appellee's Motion *in Limine* based on the Dead Man's Act (42 Pa.C.S. § 5930) and thereby excluding the testimony of [Appellant] and Rebecca . . . concerning statements by the now deceased [David,] concerning the existence of a cash asset of [Clair's estate] and in granting [Appellee's] Motion for Summary Judgment.

2. The Trial Court erred by disregarding the affidavits and/or signed statements of Jason Schnabl and Diana Sue Glosser, which provided evidentiary support and credibility to the excluded testimony and created issues of fact in their own right concerning the cash asset's existence that preclude summary judgment.

Appellant's Brief at 8.

In her first issue, Appellant argues the trial court erred in applying the Dead Man's Act to exclude her and Rebecca's testimony about statements made by David about the $130,000 cash asset. First, Appellant maintains that her and Rebecca's interests are not adverse to David's interests. In support, she reasons: (1) "she now holds the same position," executor of Clair's estate, which David held when he made the statement at issue; (2) Appellant, David, and Rebecca "all have the same interest — sharing one-third of the $130,000 that was bequeathed to them through Clair['s] will;" and (3) Appellant "is not seeking to deprive David's Estate of his [one-third] interest in the $130,000." Appellant's Brief at 16, 20. Next, Appellant contends Appellee "does not represent David's interest in the $130,000 because David was acting as Executor of [Clair's] Estate . . . to effectuate [Clair's] wishes to share the $130,000 equally with" Appellant and Rebecca. *Id.* at 22. *See also id.* ("In reality, it is [Appellee's] interest that is adverse to David's because the

$130,000 in dispute was never David's in the first place. . . . Thus, David's right has not passed to a party who represents his interest was to effectuate the testamentary wishes of Clair[.]"). Third, Appellant asserts this action "does not focus upon a contract or thing," as she and Rebecca "are not parties to a transaction or contract with David." *Id.* at 23. Instead, Appellant states, she, Rebecca, and David were "co-beneficiaries of an asset from [Clair's] Estate." *Id.* Finally, Appellant claims that even if the Dead Man's Act applied to the facts *sub judice*, the proposed testimony is admissible under the *devisavit vel non* exception, which "applies when the parties are litigating the testamentary distribution of property, which is precisely the case here." *Id.* at 25. We conclude no relief is due.

"A trial court's decision to grant a motion *in limine* 'is subject to an evidentiary abuse of discretion standard of review.'" *In re Fiedler*, 132 A.3d 1010, 1023 (Pa. Super. 2016).

On appeal, Appellant ignores the trial court's rationale that Appellant and Rebecca's interests were adverse to David's and/or his estate's interests, because the instant suit alleges David's "Estate is in possession of an asset required to be divided amongst the three" Clair-estate beneficiaries. *See* Memo. Opin., 11/20/19, at 4. We agree with the trial court. It is true that Appellant, Rebecca, and David could have compatible interests in Clair's estate matter, as they each were to receive equal shares under his will. However, as the court emphasized, this matter is not Clair's estate probate, but instead

Appellant's lawsuit against David's estate. Appellant overlooks that she has alleged conversion and fraud against David's estate. Under Appellant's own complaint, the adverse interests could be summarized as follows: whereas Appellant and Rebecca seek their shares of the $130,000 cash asset, David, acting as executor, failed to provide the asset for proper distribution through Clair's estate. Indeed, Appellant argues on appeal, "David's Estate is seeking to hide behind the Dead Man's Act to unjustly enrich itself in the amount of $86,666.67." Appellant's Brief at 20. Appellant and Rebecca "will either gain or lose as the direct legal operation and effect of" the judgment in this conversion and fraud case. *See Gibbs*, 714 A.2d at 436. Accordingly, we agree with the trial court that Appellant and Rebecca's interests are adverse to those of David. *See* 42 Pa.C.S. § 5930; *Gibbs*, 714 A.2d at 436; *Larkin*, 580 A.2d at 1152; Memo. Opin., 11/20/19, at 4.

Next, the trial court found the deceased individual, David, and now his estate, have an interest in this matter, "as it is alleged that his Estate is in possession of $130,000.00 that was to be divided into thirds pursuant to" Clair's will. Memo. Opin., 11/20/19, at 4. We conclude this is a straightforward and proper finding. Appellant's argument to the contrary — that "David was acting as Executor of [Clair's] Estate and acting to effectuate [Clair's] wishes to share the $130,000 equally with" her and Rebecca — when read against her complaint, is not entirely clear. *See* Appellant's Brief at 22. Appellant's present lawsuit is centered on claims that David did **not** act in

accordance with his duties as executor and did **not** properly distribute the $130,000 through Clair's estate. Thus, we agree with the trial court that both "the deceased . . . had an actual right or interest in the matter at issue, *i.e.* an interest in the immediate result of the suit," and the "right of the deceased [has] passed to a party of record who represents the deceased's interest." **See** 42 Pa.C.S. § 5930; **Larkin**, 580 A.2d at 1152. For the foregoing reasons, we agree with the trial court that the Dead Man's Act applies to the instant issue.

We next consider Appellant's insistence that the *devisavit vel non* exception could apply here. That exception, as stated above, "applies to disputes involving the transfer of a decedent's estate." **See Estate of Janosky**, 827 A.2d at 516 n.3. While allegations surrounding the distribution of a $130,000 asset under Clair's estate form the context for Appellant's instant claims of conversion and fraud, the estate distribution of the asset itself is **not** the subject of the case *sub judice*. Instead, the allegations in this case are that David and Appellee have withheld $130,000. The trial court properly summarized the present action is "to determine whether a cash asset exists, not who the proper beneficiary is under a will or what the intentions of a deceased devisee were." Memo. Opin., 11/20/19, at 5. On appeal, Appellant fails to address this discussion. We agree with the court that the *devisavit vel non* exception does not apply. For the foregoing reasons, the trial court did not abuse its discretion in applying the Dead Man's Act to

preclude Appellant and Rebecca's proposed testimony, nor did it err in granting Appellee's motion *in limine*. **See In re Fiedler**, 132 A.3d at 1023.

In her second issue, Appellant claims the trial court erred in granting summary judgment in favor of Appellee, where there existed additional evidence of the existence of the $130,000 cash asset. Appellant cites the affidavit of her friend, Diana Sue Glosser, as "provid[ing] independent corroboration that the meeting [between Appellant, David, and Rebecca] occurred." Appellant's Brief at 30. Appellant also relies on Jason Schabl's affidavit, which she proposes "confirmed both the existence of the safe where David stored money and the fact that David was taking action to shield [Clair's] assets from inheritance tax." **Id.** Finally, Appellant argues that Appellee "herself admitted to the existence of the safe, although she denied knowledge of the $130,000." **Id.** at 31. Appellant asserts Appellee's "denial should have been subject to cross-examination and a credibility determination at trial." **Id.** No relief is due.

We note the relevant standard of review:

> Our scope of review of an order "granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." "We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party."

> Since the issue of whether there are genuine issues of material fact is a question of law, our standard of review on that

- 12 -

issue is *de novo*, and we need not defer to the determination of the trial court in this regard. Furthermore, in resolving a question of law, we review the issue in the context of the entire record.

*In re Estate of Caruso*, 176 A.3d 346, 349 (Pa. Super. 2017) (citations omitted). "Summary judgment can be entered 'only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (citations omitted).

Here, the court reasoned both the existence of a $130,000 "cash asset" and the fact "that it belonged to" Clair's estate were "essential" to Appellant's claims of conversion and fraud. Opin. & Order, 12/29/20, at 4. However, the court found Appellant's affidavits did not establish either. It found:

> Jason Schnabl makes no mention of the $130,000 "cash asset," but rather states that he "heard David . . . discuss on multiple occasions that he was storing cash in a large safe . . . [and] only viewed the outside of the safe . . . . ."
>
> Additionally, Diana Sue Glosser states that she was not privy to the alleged conversation about the "cash asset" and "went upstairs and started vacuuming the bedroom" during the meeting held on Clair['s] estate.
>
> Consequently, there is no issue to be submitted to the jury because [Appellant] has failed to establish a *prime facie* case for conversion or fraud due to the lack of evidence that a $130,000 "cash asset" ever existed.

*Id.* at 4-5 (record citations omitted and paragraph break added).

Again, on appeal Appellant fails to address the trial court's reasoning. Our review of the two affidavits supports the court's synopses of them. We add that whereas Appellant avers the meeting between her, David, and

Rebecca occurred on January 1, 2011, Diana's affidavit stated she accompanied Appellant to a meeting on "October 7, 2011." Affidavit of Diana Sue Glosser, 9/17/20. In any event, the trial court correctly summarized that Diana stated she left the room before Appellant, David, and Rebecca discussed any matter relating to Clair's estate, and thus Diana could not testify about the existence of a $130,000 cash asset. *See* Opin. & Order, 12/29/20, at 4-5.

Similarly, Jason's affidavit merely stated: (1) he heard David "on multiple occasions [say] that he was dispersing cash from [Clair's] estate . . . to avoid losing money to the government in case his father required assisted living . . . and/or paying inheritance tax;" (2) Jason also heard David "discuss on multiple occasions that he was storing cash in a large safe . . . at his funeral home . . . in Knox, Pa[.];" (3) Jason "viewed the outside of the safe" but not the inside of the safe. Affidavit of Jason Schnabl, 9/8/20. Jason's affidavit thus likewise did not establish the existence of a particular $130,000 asset.

Finally, Appellant's claim, that this matter should proceed to trial so that she may cross-examine Appellee, is meritless. Appellant acknowledges that Appellee "denied knowledge of the $130,000.00." Appellant's Brief at 31. Any anticipated cross-examination at trial is not, as Appellant contends, "independent and circumstantial evidence that the $130,000.00 exists and was stored in the safe." *See id.*

Accordingly, we do not disturb the trial court's order granting summary judgment in favor of Appellee, as "the record clearly demonstrates that there is no genuine issue of material fact and that [Appellee] is entitled to judgment as a matter of law." *See Estate of Caruso*, 176 A.3d at 349.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2021