J-A18038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF PETER J. CARUSO, III | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| GERALDINE CARUSO | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1406 WDA 2021 |
| SANDRA CARUSO, EXECUTRIX OF THE ESTATE OF PETER J. CARUSO, III | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SANDRA A. CARUSO | : | |

Appeal from the Order Entered October 28, 2021
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  3623 of 2015

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: NOVEMBER 15, 2022**

Sandra Caruso, as executrix of the estate of Peter J. Caruso, III ("the Estate") appeals from the order directing specific performance of a buy-back provision contained in a partnership agreement. We affirm.

This factually and procedurally complex case is before this Court for a second time. We glean the facts and procedural history from the trial court's Pa.R.A.P. 1925(a) opinion and from the certified record. This case stems from a general partnership known as the Hays Land Company ("HLC") entered into via a partnership agreement executed in 1983 by Mary Ann Caruso ("Mary Ann") and her two adult sons, John Caruso ("John") and Peter Caruso ("Peter")

("1983 Partnership Agreement"). HLC is in the business of the purchase and development of real estate and has owned several separate parcels in Allegheny County.

Mary Ann sold her shares in HLC to John and Peter, in equal amounts, prior to her death in 1997. In 2003, John passed away and was survived by his Wife Geraldine Caruso ("Geraldine"). The 1983 Partnership Agreement contains a buy-back provision in the event of the death of a partner:

> If the partnership is dissolved by the death of a Partner, the remaining partners shall have the obligation within 90 days from the date of death of the deceased Partner to purchase the interest of the deceased Partner in the partnership and to pay to the personal representative of such deceased partner the value thereof as provided in paragraph 13 of this Agreement. During such 90-day period following the death of a Partner, the remaining Partners may continue the business of the Partnership, but the estate or personal representative of the deceased Partner shall not be liable for any obligations incurred in the Partnership business beyond the amount included in the estate of the deceased Partner already invested or involved in the Partnership on the date of the deceased Partner's death. The estate of the deceased Partner shall be obligated to sell as provided herein and shall be entitled, at the election of the personal representative of the deceased partner, to either [a calculation of profits or interest from 90-day wind-up period]

1983 Partnership Agreement, ¶14.

After John's death, Peter, the remaining original HLC partner, did not exercise the buy-back provision. Instead, Peter and Geraldine continued to operate the business under the HLC name until April 2015, when Peter unilaterally drew up documents to merge HLC into a limited liability company, Hays Land Company-Pittsburgh, LLC.

In May 2015 Peter died, survived by his wife Sondra, who serves as the executrix of the Estate. Shortly thereafter, Geraldine attempted to execute the buy-back provision and calculated that she would owe Peter's estate $117,762.50, based upon the book value of HLC, which is allegedly lower than the actual value. Sondra, as executrix of the Estate, would not accept payment and instead asserted that the 1983 Partnership Agreement was not in effect at the time of Peter's death because the partnership had ended with John's death in 2003.

Geraldine filed suit ("First Case") claiming that the 1983 Partnership Agreement, and thus the buy-back provision, was still in effect, and Peter's attempt to unilaterally form a limited liability company was invalid without her written consent. The trial court ultimately granted the Estate's summary judgment motion, ruling that Geraldine could not prove her case due to the Dead Man's Act.[1] Essentially, the trial court held that because Geraldine could not testify about her dealings with Peter, she could not prove that she and Peter intended to continue to be governed by the 1983 Partnership Agreement nor could she show that she opposed the formation of a new limited liability company. This Court, in a published opinion, reversed and remanded. **See In**

---

[1] **See** 42 Pa.C.S.A. § 5930 ("in any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . shall be a competent witness to any matter occurring before the death of said party").

*re Estate of Caruso*, 176 A.3d 346 (Pa.Super. 2017). We held that the Estate

failed to prove that Peter successfully executed a merger of HLC into a limited

liability company. *Id.* at 351. Further, we concluded that there was ample

evidence, even without Geraldine's testimony about conversations with Peter,

that Geraldine and Peter continued HLC after John's death and knew they were

still governed by the 1983 Partnership Agreement. Significantly here, in the

First Case, this Court specifically concluded:

> It is undisputed that the 1983 Partnership Agreement governed the HLC partnership of John and Peter. Although Executrix contends that the Partnership dissolved as a matter of law upon John's death, the language of the Agreement suggests the contrary. The Agreement provided that the Partnership "shall continue until dissolved by mutual agreement of the parties or terminated as herein provided." Partnership Agreement, at ¶ 3. The financial documents do not reflect that there was a settlement or liquidation of John's interest as outlined in Paragraph fourteen of the Partnership Agreement.
>
> * * *
>
> We find support in the record for Geraldine's contention that dissolution of the Partnership was not automatic upon John's death. The Partnership was not terminated in accordance with the [1983 Partnership Agreement] following John's death, *i.e.*, there was no buy-out of John's share that would have been mandatory following dissolution due to death of a partner. Partnership Agreement, ¶ 14. Such a course of conduct is compelling evidence that the parties intended to continue the partnership.
>
> This inference is bolstered by the tax returns from 1998 through 2014, signed by Peter, that recite that HLC was formed in 1979, and reflect the same employer identification number for HLC for more than three decades. In addition, Peter's admissions

in the prior case[2] that he and Geraldine were partners in the Hays Land Company, a Pennsylvania General Partnership, formed on or before December 12, 1983, which was the same partnership formed by John, Peter, and Mary Ann, is powerful evidence that the original partnership continued. While technically these are extra-judicial admissions, rather than judicial admissions that would eliminate the need for proof of these facts, they were unequivocal and made in circumstances where they were legally binding.

*Id.* at 353-55 (footnote omitted).

On remand, Geraldine sought an order holding, among other things, that she was entitled to specific performance of the 1983 Partnership Agreement's buy-back provision. The Estate countered that the original partnership had ceased and had been replaced by the limited liability company. Following argument, the court on October 26, 2021 entered an order in favor of Geraldine finding that the 1983 Partnership Agreement governed and directing specific performance of the buy-back provision. The Estate timely appealed, and both it and the trial court complied with Pa.R.A.P. 1925.

The Estate raises the following issues:

1. Whether the trial court erred in determining that Geraldine Caruso had a clear right to enforce a written contract between her late husband, John D. Caruso, and her brother-in-law, Peter J. Caruso, III in the absence of clear evidence of fundamental contractual precepts of mutual assent, consideration, and intent by Peter J. Caruso, III to be bound to such an agreement with Geraldine?

---

[2] Geraldine and Peter had been involved in previous litigation including the referenced equity case Geraldine filed against Peter, HLC, and related defendants.

2. Whether the trial court erred in concluding that Geraldine Caruso became a partner in a general partnership between her late husband, John D. Caruso, and her brother-in-law, Peter J. Caruso, III and had a clear right to enforce a written partnership agreement between her husband and her brother-in-law where Geraldine had not signed the agreement and did not claim to be a party or third party beneficiary thereunder, but instead claimed to have "stepped into the shoes" of her late husband?

3. Whether the trial court erred in concluding that the partnership between the decedent Peter J. Caruso, III and John D. Caruso did not dissolve as a matter of law on the death of the penultimate partner and, because the 1983 Partnership continued, the 1983 Partnership Agreement was enforceable by Geraldine?

4. Whether the trial court erred in granting specific performance to Geraldine Caruso in the absence of evidence of (i) a clear right to enforce a contract, including that she was party to a partnership agreement or a third party beneficiary thereunder; (ii) that she had no adequate remedy at law; and (iii) that justice so required?

5. Whether the trial court erred in finding that the Executrix had the burden of disproving elements of Geraldine Caruso's claims that included the nonexistence of an enforceable contract, that justice did not require specific performance, and the absence of an adequate remedy at law?

Estate's Br. at 5-6.

In its first two issues, the Estate argues that the trial court erroneously determined that Geraldine's partnership interests were governed by the 1983 Partnership Agreement because she never signed it. It further contends that there was no evidence that Geraldine and Peter entered into an oral or written agreement that she was to become a party to the 1983 Partnership Agreement. The Estate maintains that there is no authority in Pennsylvania law that one can "step into the shoes" of a signatory to a contract. Further, the Estate avers that Geraldine offered no evidence of offer, mutual assent,

- 6 -

or any consideration between her and Peter to support her claim that she became a *de facto* partner in HLC after her husband's death.

"The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support." **In re Jackson**, 174 A.3d 14, 23 (Pa.Super. 2017) (citation omitted). This Court's "task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." **Id**. (citation omitted). Regarding questions of law, our standard of review is *de novo*, and the scope of review is plenary. **In re Fiedler**, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*).

"For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." **Lackner v. Glosser**, 892 A.2d 21, 30 (Pa.Super. 2006). Further, consideration is required. **Id**. at 31.

As this Court noted in the First Case:

> Under the Uniform Partnership Act ("UPA"),[3] whether a partnership exists depends upon whether the parties intended to be partners. No formal or written agreement is required. **Murphy**

---

[3] The Pennsylvania Uniform Partnership Act, 15 Pa.C.S. §§ 8301-8365, was in effect at all relevant times herein but was repealed by the Act of Nov. 21, 2016, P.L. 1328, No. 170 § 24, effective February 21, 2017. The new Uniform Partnership Act of 2016 is codified at 15 Pa.C.S. §§ 8411-8486.

*v. Burke*, 454 Pa. 391, 311 A.2d 904 (1973). A partnership may be found to exist by implication from the circumstances and manner in which the business was conducted. *DeMarchis v. D'Amico*, 432 Pa.Super. 152, 637 A.2d 1029 (1994). Furthermore, under Pennsylvania's UPA, a partnership was not a legal entity separate from its partners and had no residence or domicile distinct from that of its partners. "It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit." *Svetik v. Svetik*, 377 Pa.Super. 496, 547 A.2d 794, 797–798, (1988) (quoting *Tax Review Board of the City of Philadelphia v. D.H. Shapiro Co.*, 409 Pa. 253, 185 A.2d 529, 533 (1962)).

*In re Caruso*, 176 A.3d at 349-50 (footnote omitted).

Further, under the UPA, "a person admitted as a partner into an existing partnership is liable for the obligations of the partnership arising before his admission as though he had been a partner when the obligations were incurred except that his liability shall be satisfied only out of partnership property." 15 Pa.C.S.A. § 8329. (repealed).[4] As noted by the trial court, a partnership may continue, even upon the death of a partner, if an agreement exists between the partners to continue. *Underdown v. Underdown*, 124 A. 159, 161-62 (Pa. 1924). An "agreement not to dissolve the partnership can be made by the deceased partner's legal representative." 13 Summ. Pa. Jur. 2d Business Relationships §16:14. (2d. ed.).

In this case, the trial court aptly concluded that the circumstances around both Geraldine's and Peter's course of conduct, following John's death, established that Geraldine essentially "stepped into the shoes" of her Husband John, in regards to HLC. The parties do not dispute that the partnership

---

[4] Section 8329 was in force at all relevant times.

between John and Peter was governed by the 1983 Partnership Agreement. However, Peter did not exercise the 1983 Partnership's buy-back provision following John's death. Instead, Peter and Geraldine continued to operate HLC together. In addition, compelling evidence of the continuing existence of the partnership would be HLC's tax returns utilizing the same employer identification number throughout, signed by Peter from 1998 through 2014, which state that HLC was formed in 1979. Further, as this Court noted, Peter's admission in a prior case that he and Geraldine were partners in HLC, a Pennsylvania General Partnership formed on or before December 12, 1983, was unequivocal evidence that the parties believed that the 1983 Partnership Agreement remained in effect. Indeed, the trial court specifically noted that Geraldine testified credibly that she relied on Peter's pattern of conduct to believe that HLC and the 1983 Partnership Agreement endured. Tr. Ct. Rule 1925(a) Op., 1/26/22 at 7.

In light of the forgoing evidence, we conclude that the trial court did not abuse its discretion when concluding that the Estate and Geraldine were subject to the 1983 Partnership Agreement. **See Jackson**, 174 A.3d at 23. Peter and Geraldine's conduct, after John's death, indicated that they intended to continue HLC as partners, subject to the 1983 Partnership Agreement. **See Murphy**, 311 A.2d at 906-07; **DeMarchis**, 637 A.2d at 1034-35; 15 Pa.C.S.A. § 8329. In addition, we also find the Estate's argument regarding insufficient contract formation between Geraldine and Peter to be of no moment. The course of conduct of both Geraldine and Peter indicates that the parties

intended Geraldine to continue as a partner in HLC, subject to the 1983 Partnership Agreement. As such, no additional consideration was necessary. Accordingly, the Estate's first two issues do not warrant relief.

In its third issue, the Estate argues that after Peter died, the 1983 Partnership Agreement was no longer in effect as the "penultimate" or last remaining partner had died. The Estate avers that Peter was the last remaining partner of HLC and therefore the partnership ended with his death. However, it cites no Pennsylvania precedent to this effect. In addition, the Estate cites the concept of "delectus personarum" for the proposition that original partners should be able to decide with whom they will associate and thus the death of a partner does not allow for an interest to pass to heirs or beneficiaries. Thus, the Estate maintains that HLC ended upon the death of John because Peter did not elect to be partners with Geraldine. The Estate cites case law for this concept dating from the late 1800s, as well as from other jurisdictions. *See Carter v. Producers' Oil Co.*, 38 A. 571 (Pa. 1897)(delectus personarum exists to allow partners to be associated only with partners of their choosing). In addition, the Estate cites a Common Pleas Court decision for the proposition that the trial court should have simply liquidated the assets of the partnership upon the death of Peter. *See Wisocki v. Howell*, 37 Pa.D & C. 2d 666 (Pa. Com. Pl. 1965).

The Estate's arguments are once again unavailing. In *Wisocki*, one of three partners in a restaurant business died. The trial court emphasized that "[i]t is well known that a partnership is dissolved by the death of one of the

partners, unless there is an agreement among them to the contrary." *Id*. at 670. Thus, the court in *Wisocki* concluded that because the partnership there at issue was entirely silent on matters of dissolution, the death of a partner required dissolution of the partnership. Conversely in the instant case, the language of the 1983 Partnership Agreement speaks to the event of a death of a partner by specifying that "**if**" the partnership was to be dissolved by the death of a partner, then the buy-out provision would apply. Thus, the 1983 Partnership Agreement was not silent as to the effect of a death of a partner, and dissolution was not required. *See id*; *Underdown*, 124 A. at 161-62.

Further, the Estate's arguments regarding the legal precepts, most often based on decisions of other jurisdictions, of the penultimate partner and delectus personarum are not applicable here. In this case, as discussed above, Peter and Geraldine, via their conduct in continuing the partnership after John's death, evinced their decision to continue HLC and thereby be governed by 1983 Partnership Agreement. *See* 15 Pa.C.S.A. § 8329 (repealed). Thus, Peter was not alone in HLC as the lone or "penultimate" partner after John's death nor was he forced to associate with Geraldine as a partner as the Estate claims. If Peter did not wish to be partners with Geraldine, he could have executed the buy-back provision to buy her share of HLC following John's death. Hence, the Estate's third issue also lacks merit.

In its fourth and fifth issue, the Estate contends that the court erred by ordering specific performance of the buy-back provision of the 1983 Partnership Agreement. The Estate asserts that Geraldine failed to establish

that there was no adequate remedy at law such that the court should not have ordered specific performance of the buy-back provision. The Estate claims that specific performance is additionally improper because it will cause injustice by causing Peter's widow Sondra to receive a reduced inheritance. Lastly, the Estate claims that the trial court erroneously placed the burden of proof on the Estate to disprove Geraldine's claim for specific performance. It argues that the court failed to make appropriate findings of fact and improperly insisted that Geraldine should have presented any concerns in a post-trial conference.

Specific performance is only appropriate where a plaintiff can establish the right to enforce a contract, and justice demands specific performance of the contract because there is no adequate remedy at law. *Oliver v. Ball*, 136 A.3d 162, 166 (Pa.Super. 2016). "An action for damages is an inadequate remedy when there is no method by which the amount of damages can be accurately computed or ascertained." *Clark v. Pa. State Police,* 436 A.2d 1383, 1385 (Pa. 1981).

In this case, we conclude that the trial court properly ordered specific performance of the buy-back provision. Having found the 1983 Partnership Agreement enforceable, the trial court was well within its purview when deciding that the only accurate assessment of damages could be obtained by effectuating the buy-back provision. *Oliver*, 136 A.3d at 167; *Clark,* 436 A.2d at 1385.

Moreover, a review of the record reveals that the trial court did not erroneously place the burden of proof on the Estate to essentially disprove Geraldine's claim for specific performance. The Estate points to the trial court's statement in its Rule 1925(a) opinion that the Estate could "have presented that concern [regarding Geraldine's alleged failure to establish the need for specific performance] by a request for post-trial conference or hearing." Tr. Ct. Rule 1925(a) Op. at 8. That statement alone does not establish that the court erroneously put the burden on the Estate to establish that specific performance was improper. Moreover, the Estate failed to include this burden shifting claim within its Rule 1925(b) statement of matters complained of on appeal and thus the claim is waived in any event. **See** Pa.R.A.P. 1925(b)(4)(vii). Therefore, the Estate's last two issues also must fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2022