## Johnson's Appeal.

1. A tenant's right of renewal, although it may not be enforcible against the will of the landlord, is a property or asset, incident to an existing lease.

2. When a lease is held by a partnership, the chance or opportunity of renewal is in itself a distinct asset of the partnership, in which all the partners have an interest. One partner in a firm cannot therefore take a new lease, or a renewal of an existing one of the firm, in his own name, or for his own benefit, without being liable to account for it to the partnership.

3. The dissolution of a partnership does not annul or change the relation of former partners in relation to the right of the renewal of a partnership lease. After the dissolution, the original leases remain partnership property, for the purpose of liquidation. The obligation of each partner to deal with them, not for his individual benefit, but for the common or joint interest, remains.

4. Where, after the dissolution of a partnership, one of the partners secures for himself, without the permission of his copartner, a renewal of the premises in which the business of the partnership had been carried on, he will be compelled to account for the value of this renewal, in a settlement of the partnership business. If the parties fail to agree as to its value, it will be fixed by a Master.

January 5th, 1887. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Clark, J., absent.

Appeal from the Court of Common Pleas No. 4, of *Philadelphia county:* In equity: Of January Term, 1886, No. 197.

This was an appeal by William H. Johnson from a decree of said court. A bill in equity was filed by Robert G. Loughrey against William H. Johnson, averring that a partnership had existed between them, that it had been dissolved and that the defendant on being requested and commanded had refused an account and settlement of the partnership business. The

115　129
190　604
115　　　129
27 SC ²515
115　　129
d 36 SC ²341
115　129
f224　²309

defendant filed an answer admitting the partnership and its
dissolution, that he had not been able to account and settle
the partnership business because the plaintiff has the books
and papers of the partnership, that he is and has always been
willing to account and settle the partnership business.   He
prayed that the plaintiff's bill be dismissed for the following
reasons *inter alia: First*, the plaintiff has maintained exclusive
possession of the books and papers since 1st October, 1883 ;
*second*, because it was agreed that the partners should bid for
the good-will of the old firm and that the highest bidder
should have possession thereof; that plaintiff bid $1,700, and
defendant bid $1,800, but plaintiff would not accept said bid
and refused to bid higher; and that the parties agreed that
neither of them should continue to do business in the old
place of business, but that each should establish his business
in some new location ; that the defendant secured a store in
another locality, but the plaintiff secretly and privately secured
for himself a lease of the premises theretofore occupied by the
firm, whereby he secured the good-will of the partnership
business and possesses the same.

C. Stuart Patterson, Esq., was appointed Examiner and
Master, who reported *inter alia* as follows :—The plaintiff and
the defendant were partners in the plumbing business.   They
leased from the city of Philadelphia, trustee under the will of
Stephen Girard, deceased, premises No. 1128 Market street,
and entered into possession thereof.   The firm did a profitable
business; but, unfortunately, on or about 1st May, 1883, the
partners disagreed, and determined to dissolve at the end of
the term, and the defendant then offered the plaintiff $1,000
for the good-will of the business, with the privilege of occupy-
ing 1128 Market street, and carrying on business there.
About the 1st of July, 1883, the plaintiff asked the defendant
if he would take the $1,000 which he (the defendant) had
offered to give, and a bidding then took place between the
parties, concluding with an offer of $1,700 from the plaintiff, and
with an offer of $1,800 from the defendant, which the plaintiff
declined to accept, and the plaintiff then refused to go on with
the bidding.   The plaintiff's story is that the bidding was
simply for the occupancy of 1128 Market street, up to 30th
September, 1883, the expiration of the lease.   The defendant's
story is that the bidding was for the successorship and the
right to take a renewal of the lease.   The partnership ended
on 12th July, 1883, but, by the terms of their lease, the firm
remained bound for the rent of 1128 Market street, until 30th
September, 1883.   Somewhere from the 15th to the 18th of
July, 1883, there was a conversation between the plaintiff and
the defendant on this subject, in which no result was reached,

and somewhere between the 20th and the 24th of July, 1883, the defendant prepared a written agreement, binding both parties not to occupy 1128 Market street, for one year after the dissolution, but the plaintiff refused to sign that agreement. In the latter part of July, the plaintiff proposed to the defendant that they should surrender their lease, and thus save a couple of months rent. The defendant at first agreed to this, but, having been informed that the plaintiff was taking steps to secure the refusal of the lease of 1128 Market street, from the time that it should be vacated by the firm, he declined to surrender the existing lease. The partnership having ended on 12th July, 1883, and the lease to the firm being about to expire on 30th September, 1883, the plaintiff on 29th September, 1883, obtained a lease of the premises from the Girard Trust for one year, from 1st October, 1883, and entered into possession thereof as sole tenant.

*        *        *        *        *        *        *

The articles of copartnership make no reference to the good-will, either of William G. Rhoads or of Johnson & Loughrey, and they contemplate on dissolution an equal division of the assets in kind. From this it follows that, if the good-will in question be an asset, neither partner can arbitrarily fix its value and charge his late copartner with that value, but that each partner may lawfully call himself "successor to William G. Rhoads, and late of the firm of Johnson & Loughrey."

Nor is the defendant's case stronger as to the lease to the plaintiff of 1128 Market street. The copartnership ended by limitation on 12th July, 1883, but the firm's lease continued until the 30th September, 1883. The partnership articles do not effect to bind the action of either party beyond 12th July, 1883, and the plaintiff refused to sign the supplemental agreement which the defendant tendered, and which, if signed, would have bound both parties not to occupy 1128 Market street before 12th July, 1884. From and after 12th July, 1883, the plaintiff was free to secure and occupy 1128 Market street from and after 30th September, 1883, the end of the firm's tenure thereof. The rule of law and the authorities upon which the learned counsel for the defendant relies are not to be controverted, but they have no relevancy to this case, for that of which the defendant complains was done by the plaintiff after the dissolution of the partnership, and at a time when the parties had voluntarily become rivals in business.

The Master is, therefore, compelled to report that the defendant is not entitled to charge the plaintiff with $1,800, the amount fixed by him as the value of the good-will of the business of William G. Rhoads and of the plaintiff's lease of the premises formerly occupied by the firm.

The defendant filed exceptions to this report which were dismissed by the court. A decree was entered in which Loughrey was not charged for the value of the renewal of the lease as prayed for by the defendant. He therefore took this appeal and filed the following assignment of error:

The court below erred in refusing to charge Loughery with $1,800, being a moiety of the value of the renewal of the lease of the premises No. 1128 Market street, together with interest thereon from the first day of October, 1883.

*John G. Johnson (Joseph R. Rhoads* with him), for appellant. —There can be no doubt that the privilege of remaining at the firm's old stand, No. 1128 Market street, was worth $3,600, inasmuch as the appellee refused to accept the appellant's offer to him of $1,800 for such right. Such occupancy, in connection with Loughrey's announcement that he was a " successor " of the old firm, practically gave to him the good-will of the business.

The question of law involved in this appeal is whether or not one partner may secure for his own exclusive benefit the renewal of a firm lease, after the dissolution of the firm, where the other partner is desirous that the benefit of such occupancy shall inure to the firm.

The point of law involved in this case is settled by well-established authorities, and nothing more seems necessary than to quote them: Lacy *v.* Hall, 1 Wright, 360 ; Clements *v.* Hall, 2 Deg. & J., 187 ; Clegg *v.* Edmondson, 8 Deg. M. & Gov., 751 ; Clegg v. Fishwick, 1 Mac. & Gov., 294 ; Note to Kelch *v.* Sanford, 1 Lead. Cases in Equity, 64 ; Sumner's Note to Moody *v.* Mathews, 8 Ves.; Mitchell *v.* Reed, 61 N. Y., 129 ; Speiss *v.* Rosswog, 96 N. Y., 651.

*Alfred Frank Custis,* for appellee.—The English cases cited by the appellant do not, as both the Master and the court below found, apply to the facts of the present cases. The New York cases, and Lacy *v.* Hall, are similar to the English cases. All these cases grew out of the acts of partners during the existence of the partnership, or of some special agreement which, for certain purposes, continued the rights of partners. But in this case the parties had ceased to be partners, had divided partnership property, did not need the premises and were open, avowed rivals.

Moreover, the appellant has at no time asked to have the appellee declared a trustee for the firm of the lease in question. He only tries to charge the appellee with a value which he (the appellant) arbitrarily places upon the lease, and this, too,

after the firm had held the premises as long as the firm lease continued.

Mr. Justice GREEN delivered the opinion of the court, January 31st, 1887.

There is no question at all that the tenants' right of renewal although it may not be enforceable against the will of the landlord, is a property or asset incident to an existing lease, and is so recognized by all the authorities. When the lease is held by a partnership this chance or opportunity of renewal is in itself a distinct asset of the partnership in which all the partners have an interest. As a consequence of this doctrine one partner in a firm cannot take a new lease in renewal of an existing one of the firm, in his own name, or for his own benefit without being liable to account for it to the partnership. In Lindley on Partnership, vol. 2, star page 574, the rule is thus stated : "It has been decided more than once that if one partner obtains in his own name either during the partnership or before its assets have been sold a renewal of the lease of the partnership property, he may not be allowed to treat the renewal lease as his own, and as one in which his copartners have no interest." In Lacy v. Hall, 1 Wright, 360, this court said, STRONG, J. : "A partner in a firm who takes a renewal of a lease to the firm in his own name holds it for the firm, and that even though the lessor has refused to renew the lease with the old lessees: Featherstonaugh v. Fenwick, 17 Ves., 298. See also note to Moody v. Matthews, 7 Ves., 186, Sumner's ed. Yet the consideration for the new lease is the covenant of the partner who obtained it. But his relation to his copartner forbids his treating for it for his own individual benefit. And if he does so treat and obtains a lease in his own name, he holds in trust for the partnership."

In Clegg v. Edmondson, 8 De. G M. & Gor., 787, it is said, "Although it cannot be laid down that in no case can a partner during the partnership contract for a new lease to himself exclusively, of property let to a partnership, it is very difficult (and especially as regards a managing partner) to make out such a case, and the mere announcement to his partners of his intention to apply for such a lease after the dissolution is not sufficient to exclude their interest, although the partnership is at will."

Nor does the fact that the renewal was obtained after the dissolution change this rule. Thus in Speiss v. Rosswog, 96 N. Y., 651, the Court of Appeals of New York affirmed an opinion of the Supreme Court in which SEDGWICK, C. J., said: "The fact in this case which the learned counsel for

the respondents argues distinguishes it from those cases in which the partner taking a renewal of the partnership leases, has been held a trustee of the firm, is that the defendant Constantine Rosswog obtained them after the firm was dissolved. This dissolution did not annul or change those relations between the parties which are the basis of the obligation in such cases. After the dissolution the original leases remained partnership property for the purpose of liquidation. The obligation of each partner to deal with them, not for his individual benefit, but for the common or, joint interest, remained. The trust as to the use of the partnership property remained attached to these leases, as part of their value was the so-called expectation of renewal. This is deemed so actual and vital that when a new lease is had it is considered to be a graft upon the old :" 16 Jones & Spencer's Rep., 135.

This reasoning is in consonance with our views and appears to be a necessary consequence of the partnership relation applied to what is clearly a partnership asset. The circumstance that there was no provision for a renewal contained in the old lease is immaterial. It is not the absolute right to a renewal, but the expectancy or opportunity of renewal which pertains to a greater or less extent to all leases, that constitutes the property or asset in question. And this expectancy grows out of and belongs to the old lease which, being firm property, draws to it the expectancy and clothes it with the same quality. In the present case the lease of the firm expired October 1st, 1883, the firm was dissolved July 12th, 1883, and the new lease was obtained by Loughrey on September 29th, 1883, before the expiration of the old one. As the new lease was not made with the consent of Johnson he has not lost his right to have Loughrey account for the value of the expectancy thus appropriated by him. That value however must be determined by the Master, it cannot be fixed or even indicated by us, and it must be determined as an expectancy only and not as a certainty.

> The decree of the court below is reversed at the cost of the appellee, and the record is remitted with direction that the cause be referred to the Master to take testimony and report the value of the expectancy of renewal, and thereupon to charge the appellee with the same as a partnership asset in the settlement of the accounts.