## Underdown, Exrx., Appellant, *v.* Underdown.

*Partnership—Dissolution—Death—Duty of surviving partners— Use of firm funds—Accounting—Interest—Leasehold—Good will.*

1. Unless the partnership articles provide otherwise, a partnership is dissolved by the death of one of the partners.

2. In the absence of an agreement to the contrary, surviving partners, who continue the business of a partnership, must pay to the representatives of a deceased partner, the value of the decedent's share in the business, and, at the option of his representatives, either interest thereon or the profits attributable to the use of that share.

3. The option will terminate whenever the surviving partners, with the consent of the personal representatives of the deceased partner, set apart a fund to meet the claims of the latter. In that event, the value of the share of the deceased partner must be ascertained as of the date the fund is set apart, and thereafter only interest will be allowed on the amount thus found to be due.

4. Partners who draw from firm assets, moneys for other purposes than those of the partnership, must account therefor to their copartners, in the absence of an express or implied agreement to the contrary.

5. Knowledge of the fact that moneys are thus being drawn, will not alone imply an agreement that they need not be accounted for.

6. Interest will not be chargeable on such withdrawals, however, unless the peculiar facts and circumstances of the particular case equitably require it,

7. Surviving partners must account for the value of a leasehold interest, belonging to the firm, and the expectancy or opportunity of renewal thereof.

8. Ordinarily, surviving partners, who continue a business, will not be required to pay for its good will, aside from the value of the leasehold and the expectancy or opportunity of renewal thereof.

*Equity—Practice, equity — Requests for findings of fact — Objections.*

9. A chancellor must answer requests according to the facts, and not merely declare them as irrelevant, or as stated.

10. Objections made by one party to the requests of another are intended as guides to the chancellor in answering the particular requests, but should not, with his answers to them, be attached to the report, or made part of the record.

Argued January 16, 1924. Appeal, No. 220, Jan. T., 1924, by plaintiff, from decree of C. P. No. 1, Phila. Co., March T., 1920, No. 4290, dismissing exceptions to master's report, in case of Clara H. Underdown, executrix of Howard Underdown, deceased, v. Americus R. Underdown, Jr. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for accounting.

Exceptions to report of master. Before SHOEMAKER, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Frederick J. Shoyer,* with him *Joseph L. Wase,* for appellant.—Dissolution by death or otherwise of a partnership does not terminate the partnership relation until the business has been wound up and distribution made: Smith's Est., 11 Phila. 131.

In account the partner or his estate is entitled to his share of the capital at the time of dissolution or death, plus interest or profits until the time of distribution:

Fithian v. Jones, 12 Phila. 201; Robinett's App., 36 Pa. 174; Eisenlohr's Est., 258 Pa. 431.

The renewal of a lease after dissolution but before final settlement enures to the benefit of the partnership: Johnson's App., 115 Pa. 129.

The master erred in failing to surcharge the surviving partner with overdrafts, personal insurance premiums, church contributions and unexplained payments: Leary v. Kelley, 277 Pa. 217; Runyeon v. Eaches, 79 Pa. Superior Ct. 272.

On a dissolution by death, the good will does not go to the survivor alone but is still a firm asset for whose value he must account if he obtains it: Holden v. Mc-Mackin, 1 Parson's R. 282; Musselman & Clarkson's App., 62 Pa. 81; White v. Trowbridge, 216 Pa. 11; Graeser's Est., 230 Pa. 145.

*Morton Z. Paul,* with him *Joseph A. Boyer,* for appellee.—On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed.

This settlement having been made in good faith, and, as has since been unquestionably proved, in strictest honesty, appellee had a right to treat the business as his own after that date.

OPINION BY MR. JUSTICE SIMPSON, February 18, 1924:

Howard Underdown and his brother, the defendant herein, were in business together when the former died on December 29, 1918. The partnership articles provided that each should have an equal interest in the business, which should continue from year to year, until one should give three months' notice to the other of an intention to determine it at the end of the then current year; that each should draw the same sum weekly, to be charged against his share of the profits; that the death of one partner should not dissolve the partnership, which should be continued by the survivor to the

end of the current year; and that each partner should annually render to the other, or to the legal representatives of the deceased partner, a true and perfect account of all profits made and losses sustained in the joint business, and "also all payments, receipts, disbursements and all other things whatsoever by him made and received, acted, done and suffered in said copartnership." So far as appears no notice of an intention to terminate the partnership was ever given; nor were annual accounts furnished at any time by either to the other.

The property occupied by the partnership was leased from year to year, until three months' notice of an intention to determine it should be given by lessor or lessee. No such notice was ever given, and hence, when Howard Underdown died, the lease was in force until December 31, 1919, and, by its terms, would continue thereafter, from year to year, unless due notice of termination was given. During that year, however, appellee obtained a new lease, in his own name, for a term of ten years.

After Howard Underdown's death, and the appointment of plaintiff as executrix of his will, an agreement of settlement of the partnership affairs was entered into between her and defendant, by which she sold to him her testator's interest in the firm for $40,157.15, he giving and she accepting, $157.15 in cash and a note for $40,000, payable one year from date. On this note $225 interest was paid by defendant to her. Subsequently she became dissatisfied, whereupon defendant agreed with her that the settlement should be set aside, with the same effect "as though no such paper was ever signed by her."

Subsequent efforts to adjust the matter having failed, plaintiff sent to defendant a check for the payments received by her, which he retained but did not cash; and, at a still later date, she tendered back the $40,000 note. She also began the present suit in equity, for an accounting by defendant of the partnership affairs; the business having been continuously carried on by him after the death of his brother. On the first hearing, the court be-

low dismissed the bill, because there was no proof that plaintiff was entitled to a greater amount than the $40,157.15 agreed upon. We reversed this: Underdown v. Underdown, 270 Pa. 229. On the return of the record, a decree for an accounting was entered and the matter was referred to a master; his report was confirmed by the court below, and, from the final decree that followed, the present appeal was taken by plaintiff. The assignments of error are numerous; but, as shown by the statement of the questions involved, the vital issues are few in number, and we do not find them difficult of determination.

Notwithstanding the unchallenged finding that, by the rescission of the agreement of settlement, plaintiff's right became the same "as though no such paper was ever signed by her," the court below treated the case as if that agreement was still in force for all other purposes than as fixing the amount due. This was error. Plaintiff's rights, there being no agreement standing in the way, are fixed by section 42 of the Uniform Partnership Act of March 26, 1915, P. L. 18, 32, which provides that she is entitled to have "an amount equal to the value of his interest in the dissolved partnership with interest, or,......at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."

Against this conclusion appellee urges that the death did not work a dissolution, because the partnership articles so state, and hence the statutory provision does not apply. This, however, is a mistake; the articles only stipulate against an immediate dissolution, and for the continuance of the business until the end of the then current year. They do not set forth what shall happen after that, and hence the partnership, as such, was necessarily dissolved at the expiration of that period, whether the survivor became entitled to carry on the business thereafter, or was bound then to wind it up.

It is also claimed that the provision quoted does not apply in the instant case, because defendant "borrowed $40,000 to complete the settlement." This would be correct, if defendant had not consented to rescind the agreement of settlement, with the same effect "as though no such paper was ever signed by her." As he did so consent, however, it is a matter of indifference whether or not be borrowed the money to complete the abandoned settlement. Somewhat inconsistently with the foregoing averment defendant also asserts that the $40,000 was, with her approval, borrowed by him and placed in a special account, to secure her for whatever thereafter was found to be due. There is no finding to sustain this contention, but, if it should be ascertained to be true,—and leave is hereby given to prove it on the return of the record,—then plaintiff's right to elect between interest and profits earned, must be made as of that date. If this claim is found to be erroneous, the right of election must be treated as if made on June 15, 1921, when she actually received $25,000 on account, and "agreed that the balance [found by the master], amounting to $4,-146.24, or any other sum in excess of the said $25,000, shall remain in the hands of the defendant until final determination of the case." On whichever of these dates it is found she legally made an election, which was accepted and acted on by defendant, she became, in the language of section 42 of the Uniform Partnership Act, "an ordinary creditor [in] an amount equal to the value of his interest in the dissolved partnership with interest"; the latter being calculated to the date of actual payment.

Appellant alleges error also in not charging against defendant the sums which were expended by him, or under his direction, from firm assets, but for matters wholly foreign to partnership affairs. Confessedly this would ordinarily be a correct surcharge, but it is sought to defeat it here on the ground that decedent had access to the books, and must have known these payments were

being made. This fact may be conceded, but it cannot be inferred therefrom that he agreed defendant should be entitled to a credit for those amounts on final adjustment. Had it appeared that settlements had been made from time to time, and decedent had allowed appellee to have a credit for these sums, without accounting for them, and that the subsequent payments were in the same class and not excessive in amount, an entirely different question would arise; but no such settlements were shown, and, it may be added, defendant was not a competent witness on the subject. In the absence of such proof, the partnership articles must control, and by them each was to receive only a definite weekly amount, and was to render to the other a true and perfect account touching the partnership assets. We are of opinion that these surcharges must be made, but without interest; which may be allowed, in the settlement of partnership accounts, only when equity demands it, because of the peculiar facts and circumstances of the case: Goodwill v. Heim, 212 Pa. 595. None such appear here. On the contrary, each of the partners thus drew from the assets, in which they were jointly interested, and each knew the other was doing so. Instead of peculiar facts and circumstances being disclosed, the course pursued was quite usual, and was a convenience to both the partners.

Plaintiff also complains because she was not allowed anything for the value of the leasehold, which was renewed after the death of decedent. Having found that the partnership did not end until plaintiff made her election, it necessarily follows that the estate's interest in the leasehold also continued until that time. Consequently its value, until the end of the then current year, should have been ascertained and carried into the account. At that time also there was a possibility of renewal for another year, and Johnson's App., 115 Pa. 129, is an express authority for the conclusion that the chance or opportunity of that renewal is in itself a distinct asset, for which the partner, who takes a new lease

in his individual name, must account. This is the usual rule, not without exceptions, however, (16 R. C. L. 906) ; the amount to be received being determined by valuing "the expectancy or opportunity of renewal,......as an expectancy, only, and not as a certainty": Johnson's App., supra, page 134. The fact that defendant took a new lease for ten years is a matter of no moment, for in it plaintiff has no interest. It was procured at a time when he believed, as he had a right to do, that he was sole owner of the business, because of his settlement with plaintiff. Nor can the case be treated as an indefinite year to year possibility of renewal, for in that event it might run on indefinitely. All such rules must be reasonably applied, and a single yearly right of extension will be treated as proper, where the lease is from year to year. Consequently plaintiff is entitled to have added, as an asset of the partnership, the actual value of the leasehold for the balance of the calendar year, after the date of plaintiff's election, and "the expectancy or opportunity of renewal," for the term of another year only.

The final question raised is: Is plaintiff entitled to have ascertained and carried into the account, the value of the good will of the business? We think not. We are indebted to counsel for appellant for his able and interesting brief on this subject; but, under the facts of the instant case, such a charge should not be made. Though there are fifteen sections in the Uniform Partnership Act, which deal with the subject of the dissolution and winding up of partnerships, including therein the rights of the estate of deceased partners when the business is continued, good will is not even mentioned. The partnership articles of this firm are also silent in regard to it.

In Musselman and Clarkson's App., 62 Pa. 81, we held that good will could hardly exist independently of the property occupied by the firm; and in Marmaduke v. Brown, 254 Pa. 18, under circumstances like the pres-

ent, we held the surviving partner was not liable for good will. We think that allowing the leasehold interest to be valued and carried into the account, as above provided for, is all that in equity should be charged against appellant.

The master has caused us much unnecessary labor by failing to observe our requirement that requests should never be "declined as irrelevant." Each should be answered according to the fact, to which may be added the opinion that it is irrelevant, if the chancellor believes it to be so: Glenn v. J. C. Trees Oil Co., 266 Pa. 74. So also no request should be "declined as stated," for, judging from the instant case, this means no more than "declined as irrelevant," or at most some unsubstantial difference in the statement of the facts. We also note that the facts set forth in a number of the requests which were "declined as irrelevant," "declined as stated," or simply "declined," were afterwards substantially found by the master in his own language. We have had occasion recently to send back several reports because of such inconsistent findings: Palmer Water Co. v. Lehighton Water Supply Co., 265 Pa. 199. The record is still further encumbered by the master answering defendant's objections to certain of plaintiff's requests, and then making the objections and his answers thereto a part of his report. This is unnecessary; under Equity Rule 62, the objections are intended as a guide to the chancellor, and have no other purpose.

Our conclusion as above must not be construed as a reflection upon defendant. On the contrary, a careful study of the record convinces us that he has acted in good faith throughout.

The decree of the court below is reversed, and the record is remitted with directions that an account be stated in accordance with the views expressed in this opinion, the costs below and here to abide the final decree on the accounting.